Dows et al. v. McCleary et al.

---

## DAVID DOWS ET AL.

### v.

## BYRON J. McCLEARY ET AL.

1. GOODS LEFT BY OWNER WITHOUT LIMITATION WITH CUSTODIAN WHOSE COMMON BUSINESS IS TO SELL SUCH KIND OF GOODS.—If an owner of goods puts them into the custody of another, whose common business is to sell that kind, or that and other kinds of goods, and such owner places no limitation upon the authority of such custodian, he thereby confers upon such custodian an implied authority to sell them.

2. LIABILITY OF THIRD PARTIES FOR GOODS SOLD BY CUSTODIAN.— Where the character of the business of the custodians of certain corn of plaintiffs, and the circumstances in evidence (aside from a supposed contract, which was void for want of mutuality) tended to show that the custodians were authorized, so far as defendants were concerned, in shipping to the latter said corn, which defendants received from the custodians in the usual course of business, sold and returned to them the proceeds in good faith and without notice of any interest of the plaintiffs therein, defendants were not liable to plaintiffs for such corn.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.    Opinion filed February 12, 1884.

This action was trover, by David Dows & Co. against McCleary, Smith & Co., to recover the value of eight car loads of corn. On the trial before the court, without jury, the plaintiffs proved the signature of Morse & Lilley, and the court permitted them to give in evidence, against the defendants' objections, the following instrument:

" Memorandum of agreement made December 17, 1879, between David Dows & Co. and Morse & Lilley, of Corning, in the State of Iowa.

" David Dows & Co. are to provide Morse & Lilley the money necessary, from time to time, to purchase such quantity of sound ear corn at Corning, in the State of Iowa, as David Dows & Co. deem advisable.

" Morse & Lilley agree to make such purchases for David Dows & Co., and to use the money so provided for no other purpose than the purchase of sound ear corn as above stated, and the expenses necessarily connected therewith, and the corn so purchased shall be the property of David Dows & Co., and the cribs containing same shall be marked with the name of David Dows & Co.

" It is further agreed between the above mentioned parties, that Morse & Lilley, as compensation for their services in purchasing, handling, cribbing, shelling and shipping the above corn, shall receive whatever sum may remain when the corn is sold by David Dows & Co., after David Dows & Co. shall have received the money so invested, and interest thereon at the rate of eight per cent. per annum, also one cent per bushel, and all freight and other charges and expenses incurred by them.

" And Morse & Lilley further agree, in consideration of the premises, to guarantee David Dows & Co. against all loss on account of the purchase of the above mentioned corn, and to make good to them their investments with interest; also one cent per bushel, and such charges and expenses as may have been incurred by them.

(Signed)        " MORSE & LILLEY."

Plaintiffs introduced no evidence tending to show the execution of the supposed agreement on their part, but proved by Morse, of the firm of Morse & Lilley, that a Mr. Cheney, whom Morse called the agent of David Dows & Co., called on them and that he orally agreed that his principals should furnish money for his firm to buy corn with. He does not testify to the delivery of the supposed contract, or that they received any duplicate from Dows & Co. Evidence was given

Dows et al. v. McCleary et al.

that Morse & Lilley went on buying corn, on a large scale, at Corning, where they were carrying on the business of buying and selling corn.  They had cribs at their town, and when one was filled they would issue a document to Dows & Co., in the following form, varying only as to quantity of corn and description of crib:

" No. 9.                      Corning, Ia. Jany. 24, 1880.

We have bought for David Dows & Co., fifty-four hundred bushels of sound ear corn, and have stored same in good covered cribs, numbered six (6), located on lots owned by G. U. Frank, situated in the town of Corning, county of Adams, State of Iowa, and each of said cribs is marked with the name of David Dows & Co.

5,400 bushels.          (Signed)        Morse & Lilley."

It appeared that the cribs were so marked, and that Dows & Co. advanced all the means to pay for the corn, by accepting drafts drawn by Morse & Lilley, or either of them, at Chicago, where they did business.   The evidence shows that, between the 3d and 13th of September, 1880, the firm of Morse & Lilley shipped from one of the cribs, at Corning, so marked, and for the contents of which they had given their receipt to Dows & Co., five car loads of corn to McCleary, Smith & Co., of Chicago, the defendants, to be sold by them on commission; that they did sell the same, in the usual course of business, without any notice of plaintiffs' interest therein, and remitted the proceeds to Morse & Lilley; after demand made by plaintiffs, this suit was brought to recover for said corn and other car loads.   The court found for the defendants, and plaintiffs bring the record here to be reviewed upon the general facts, without any specific ruling below.

Messrs. Monroe & Tewkesbury, for appellants; that the corn in controversy belonged to appellants, was in their possession and stored in cribs marked with their firm name, and appellees having converted the same are liable therefor, cited Fawcett v. Osborn, 32 Ill. 411; Turley v. Bates, 2 H. & C. 200; Martineau v. Kitching, L. R., 7 Q. B. 449, 450–454; Fitch v. Burk, 38 Vt. 689; Young v. Matthews, L. R., 2 C.

B. 127; Riddle v. Varnum, 20 Pick. 283; Fuller v. Bean, 34
N. H. 300–304; Stone v. Peacock, 35 Maine, 388; Blackburn
on Sales, 150, 151; Bellows v. Wells, 35 Vt. 599; Summer v.
Hamlet, 12 Pick. 76–82; Morse v. Sherman, 106 Mass. 433;
Kimberly v. Patchen, 19 N. Y. Ct. Ap. 330; Merchants Nat.
Bk. v. Bangs, 102 Mass. 295; Bassett v. Armstrong, 6 Mich.
397.

McALLISTER, P. J.   We are unable to perceive, from an ex-
amination of the record in this case, how the case imposes
upon us the duty or necessity of giving a construction of
the supposed contract purporting to be between Dows &
Co. and Morse & Lilley, of date Dec. 17, 1879, with a view
of determining its effect as respects the question, in whom
was the property in the corn alleged to have been converted
by the defendants? There is no evidence in the record that
Dows & Co. ever executed that contract, in duplicate or other-
wise. From what the record fails to show, and what it does
show, the court below would have been justified in finding the
supposed contract void for want of mutuality; and we are
to presume that the court did so find. That being so, there
was no evidence to show any or what limitations were placed
by Dows & Co. upon Morse & Lilley, in whose custody they
left the corn, or the extent of their authority in respect there-
to. They, it seems, were, and for a long time previously had
been, engaged in the place where the corn was stored, in the
business of buying, shipping and selling corn. It seems to
be a recognized rule of law that if the owner of goods puts
them into the custody of another, whose common business it
is to sell that kind, or that and other kinds of goods, and such
owner places no limitation upon the authority of such custo-
dian, he thereby confers upon such custodian an implied au-
thority to sell them. Pickering v. Bust, 15 East, 38; ap-
proved in Saltus v. Everett, 20 Wend. 280.

The character of the business of Morse & Lilley, and the
circumstances in evidence (aside from such supposed contract,
which the court below was justified in holding void for want
of mutuality) tended to support the finding below that Morse

& Lilley were authorized, so far as the defendants were concerned, in shipping to the latter the corn in question, which they received from Morse & Lilley in the usual course of business, sold and returned to them the proceeds, in good faith, and without notice of any interest of the plaintiffs therein. The case is entirely distinguishable from Fawcett, Isham & Co. v. Osborn, Adams & Co., 32 Ill. 411. And we think the judgment below should be affirmed.

Affirmed.